IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHELLEY CETIN,** ) <br> 640 West 67th Terrace ) <br> Kansas City, Missouri 64113, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **KANSAS CITY KANSAS** ) <br> **COMMUNITY COLLEGE** ) <br> (Serve: ) <br> Dr. Greg Mosier, President ) <br> 7250 State Avenue, ) <br> Kansas City, Kansas 66112), ) <br> ) <br> Defendant. ) | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Shelley Cetin states the following as her cause of action against Defendant Kansas City Kansas Community College.

1. Plaintiff Shelley Cetin (Plaintiff) is a female resident of Kansas City, Jackson County, Missouri.

2. Defendant Kansas City Kansas Community College ("Defendant" or "College") is a community college whose principal place of business is 7250 State Avenue, Kansas City, Kansas 66112, within the District of Kansas.

3. Defendant is also a subdivision of the State of Kansas existing pursuant to K.S.A. § 71-201, *et seq.*

4. Defendant is an employer as defined by and within the meaning of 42 U.S.C. § 12111(5) of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

5. Plaintiff is bringing these claims pursuant to the ADAAA, 42 U.S.C. § 12101, *et*

*seq.*

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

7. Venue is proper because Defendant is located in Wyandotte County, Kansas in the District of Kansas and/or because a substantial part of the events or omissions giving rise to these claims occurred in Wyandotte County, Kansas in the District of Kansas within the meaning of 28 U.S.C. § 1391(b).

8. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Defendant engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, the allegations of Plaintiff's lawsuit would have arisen from the investigation of Plaintiff's Charge of Discrimination.

9. A Notice of Right to Sue has been issued by the Equal Employment Opportunity Commission and this action is being brought within ninety (90) days from the issuance of such Notice of Right to Sue.

10. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures in accordance with the law prior to instituting this lawsuit.

11. In October 2010, Plaintiff began working as a part-time Instructor for Defendant.

12. After two semesters, Plaintiff began teaching full-time.

13. Plaintiff is presently employed by Defendant as a full-time English as a Second Language (ESL) Instructor in the Adult and Continuing Education Department.

14. During Plaintiff's tenure with Defendant, she has consistently received high annual evaluation ratings.

15. Plaintiff has been diagnosed with asthma, rheumatoid arthritis, and is an insulin dependent diabetic with type 1 diabetes.

16. Plaintiff has also been diagnosed with hypogammaglobulinemia G.

17. Hypogammaglobulinemia is a disorder caused by low serum immunoglobulin or antibody levels and is an immunodeficiency.

18. Hypogammaglobulinemia is a rare condition that leaves Plaintiff without the most common antibody which protects her respiratory system.

19. As a result of these diagnoses, Plaintiff is multiply immunocompromised.

20. Due to Plaintiff's health conditions/disabilities (as identified above in paragraphs 15-19) and the COVID-19 pandemic, Plaintiff requested an accommodation to work remotely and teach classes via video conference from April 2020 to the end of May 2021.

21. Plaintiff provided medical documents from her doctors to Defendant that supported her request for accommodation.

22. Defendant granted Plaintiff's request for accommodation to work remotely from home from April 2020 to the end of May 2021.

23. On June 30, 2021, Plaintiff received an email from Sherita Miller-Williams (Miller-Williams), Defendant's Human Resources Benefits Coordinator, stating that her work from home accommodation had expired.

24. Miller-Williams further stated in relevant part, "Your work from home accommodation will be reviewed every 30 days due to the continuous changes with the pandemic daily. If your medical professional is still recommending the request you will be required to submit new paperwork or return to campus to work."

25. In response, Plaintiff provided letters to Defendant's human resources department from two of her doctors dated July 28 and 29, 2021, and Plaintiff requested the same accommodation of continuing to teach remotely due to her health conditions and the COVID-19 pandemic.

26. On or about August 3, 2021, Plaintiff spoke over the telephone with Miller-Williams.

27. Miller-Williams confirmed that she received the letters from Plaintiff's doctors and her request for accommodation.

28. Miller-Williams told Plaintiff that the Human Resources Director Christina McGee (McGee) was waiting on direction from the College.

29. Miller-Williams also told Plaintiff that it would be better for human resources to consider her request once everyone was back on campus on August 9, 2021.

30. On or about August 3, 2021, Plaintiff emailed Stephanie Prichard (Prichard), the Assistant Director of Adult Education, and informed Prichard of her request for accommodation and her telephone call with Miller-Williams.

31. Since Plaintiff's department had an in-person meeting scheduled for August 4, 2021, Plaintiff asked her if she could socially distance during the meeting and sit near the door.

32. Prichard expressed empathy and told Plaintiff that it was fine for her to socially distance and sit near the door during the meeting.

33. On or about August 5, 2021, Plaintiff's Director, David Beach (Beach), shared with her that human resources informed him that allowing her to work from home would "set a precedent."

34. Beach then told Plaintiff that he was almost certain that her request for accommodation would be denied.

35. On or about August 8, 2021, Plaintiff learned that one of the other ESL teaching staff who attended the August 4, 2021, meeting tested positive for COVID-19.

36. On August 12, 2021, Miller-Williams sent Plaintiff an email informing her that her request for an "accommodation to work from home [was] denied."

37. Miller-Williams' email went on to state, "It would be a [sic] undue hardship on the college to allow [Plaintiff] to work from home while the college [was] open. This request is being denied because the ability for employees to work from home 100% of the time has ended."

38. Defendant provided no explanation of how continuing to allow Plaintiff to work remotely during the fall 2021 semester was an undue hardship on Defendant.

39. On August 13, 2021, Plaintiff responded to Miller-Williams' email and stated:

In response to the denial of the workplace accommodation I requested, I would like to let HR know that my work product while working remotely last year, as measured by student outcomes, was not different from outcomes in 2019. Also, while working remotely last year, I completed a certification on best practices in the remote classroom and on the basis of my work toward that certification, I was recommended by a national trainer to complete training to become a state trainer for the Kansas State Board of Regents.

I understand that yes, employers have the right to refuse an accommodation if such accommodation poses an 'undue hardship.' I would ask for an explanation, so that I may better understand HR's position.

Thank you so much.

40. In response, Miller-Williams informed Plaintiff that work performance is not something Defendant factors in when determining workplace accommodations and that the decision to deny her request was not only made by human resources but discussed with McGee and the Vice President of Academic Affairs, Jerry Pope (Pope).

41. Miller-Williams then asked Plaintiff to let her know if there were any other accommodations that would assist her to work safely on campus.

42. Plaintiff believed (and still believes) the safest way for her to work given her health conditions is for her to work from home, rather than working around other teaching staff and students on campus.

43. Plaintiff is not aware of any financial costs to Defendant associated with her request to continue to work remotely.

44. Defendant had already paid to install a virtual private network (VPN) on Plaintiff's personal laptop so she could securely access her work email, and Plaintiff's classroom was already equipped with a camera and projector.

45. While working from home, Plaintiff used her own laptop, printer, paper, and ink, and she also purchased personal copies of all her course books.

46. Defendant allows other instructors, who have no health conditions and/or disabilities of which Plaintiff is aware, to teach classes remotely.

47. On or about August 16, 2021, Plaintiff provided Defendant a letter dated August 11, 2021, from her allergist and immunologist stating that she receives intravenous immunoglobulins replacement therapy every four weeks because of her hypogammaglobulinemia G and that her condition increases her risk for upper respiratory tract infections.

48. In the letter, her physician strongly recommended that Plaintiff continue to work remotely through the fall semester to reduce her risk of infections due to COVID-19.

49. On or about August 19, 2021, Plaintiff participated in a Zoom meeting with Beach and Prichard regarding her concerns about working on campus given the COVID-19 pandemic and her health conditions.

50. Beach proposed giving Plaintiff a department office in which she could isolate and from which she could teach her students while her students attended class in the classroom or remotely via video conference.

51. Plaintiff accepted this proposal, and students were then allowed to attend class remotely or in a hybrid setting.

52. However, Defendant continued to require Plaintiff to work on campus and attend in-person work events on campus.

53. Several times during the fall semester, Plaintiff was in close proximity to individuals on campus who contracted COVID-19.

54. Each time, Plaintiff feared for her own health and safety.

55. In light of the highly contagious COVID-19 Omicron variant, Plaintiff requested a meeting with human resources to again renew her request to work remotely from home.

56. Plaintiff no longer felt it was safe for her to work anywhere on campus since even vaccinated individuals can spread the virus.

57. On December 13, 2021, Plaintiff had a video conference meeting with McGee and Miller-Williams.

58. During this meeting, Plaintiff explained in detail her health conditions and how she is especially susceptible to contracting respiratory and other infections, she discussed the letters provided by her doctors, and she reiterated her request to work remotely from home as an accommodation to her health conditions/disabilities.

59. At the conclusion of the meeting, McGee said that she wanted to take some time to consider Plaintiff's request and speak to Pope.

60. On December 16, 2021, McGee emailed Plaintiff to inform her that she hoped to have a final decision with respect to her accommodation request during the first week of their return to campus, i.e., the week of January 3, 2022.

61. On January 11, 2022, Plaintiff emailed McGee for an update on her request for accommodation.

62. Plaintiff again discussed with McGee her concerns about the Omicron variant and pointed out that since the beginning of the academic year, there had been five positive cases of COVID-19 reported in the Continuing Education Building where her ESL classes met.

63. That same day, McGee responded and told Plaintiff that she had not been able to bring resolution to her request, but she told Plaintiff that she could work remotely until she had a final decision.

64. On January 21, 2022, Plaintiff followed up again with McGee regarding her request to work remotely and shared her concern that her Director had just tested positive for COVID-19.

65. Plaintiff also asked McGee when she could expect a response.

66. McGee did not respond to Plaintiff.

67. On February 1, 2022, Plaintiff filed a Charge of Discrimination with the EEOC alleging that Defendant failed to accommodate her and discriminated against her because of her health condition/disabilities.

68. In June 2022, Plaintiff received her annual performance evaluation with an overall rating of Exceeds Expectations.

69. On July 29, 2022, Plaintiff emailed McGee and Sean Burkett (Burkett), Defendant's Deputy Title IX Coordinator and Employee Relations Manager, asking to continue to work remotely when her department returned to campus on August 1, 2022.

70. Plaintiff informed McGee and Burkett that Prichard told her that she was fine to continue to teach remotely, that she received an excellent annual evaluation that year, and that her students' educational gains were above the goal set for the Adult Education program by the Kansas Board of Regents.

71. On July 31, 2022, Plaintiff followed up on her July 29, 2022, email to McGee and Burkett, stating:

> Hello, Christina,
>
> If it was not clear from my previous email (below), I am requesting an accommodation to continue working remotely based on disabilities which put me at particular risk for Covid. I have Type 1 (juvenile) diabetes, rheumatoid arthritis, asthma, and a rare condition hypogammaglobulinemia, also called ICG deficiency. Having only one of these immune system deficiencies would put me at higher risk for Covid and other respiratory infection; having four of them while working on campus further increases the risk for contracting Covid and other respiratory illnesses.
>
> I hope this makes clear my request for accommodation.
>
> Shelley Cetin

72. On August 1, 2022, McGee responded to Plaintiff via email informing her that her request was under review.

73. McGee also wrote, "I will follow up with you once I have a final answer regarding your accommodation request. In the meantime, we will temporarily allow you to work from home until a decision is made. I hope to have a final response to you by this week."

74. On August 24, 2022, McGee emailed Plaintiff asking to schedule a Teams meeting on August 25, 2022, to follow up on her accommodation request to work from home.

75. Plaintiff agreed to the Teams meeting and asked if her attorney could attend.

76. In response, McGee suggested rescheduling the meeting if Plaintiff's attorney planned to attend, but McGee did not suggest any alternate meeting dates.

77. Plaintiff did not hear anything further from McGee or Miller-Williams regarding the status of her request for accommodation.

78. Plaintiff did not receive a response to her January 23, 2023, email from McGee or Miller-Williams.

79. On January 26, 2023, Defendant sent an email to all employees announcing the implementation of its Hybrid Work Pilot Program and the steps required to participate.

80. Eligible employees participating in Defendant's Hybrid Work Pilot Program were allowed to work from home two days per week.

81. Employees were eligible to participate in Defendant's Hybrid Work Pilot Program if they were full-time staff or non-instruction staff who could perform at least 75% of their duties remotely.

82. Mandatory training for Defendant's Hybrid Work Pilot Program was scheduled from January 31, 2023, through February 13, 2023.

83. On February 7, 2023, Defendant sent a reminder email to all employees about mandatory training for the Hybrid Work Pilot Program and announced additional trainings throughout February and March 2023.

84. On February 7, 2023, Plaintiff emailed Prichard informing her that she had not heard a response from McGee or Miller-Williams to her January 23, 2023, email requesting a meeting, and she asked Prichard if they needed to meet to talk about whether she qualified for hybrid work since she was still on a temporary remote working status.

85. On February 9, 2023, Prichard responded to Plaintiff informing her that Beach had contacted Burkett, and Burkett said he would talk to McGee.

86. Prichard told Plaintiff that Beach and she felt it was best for her not to complete the Hybrid Work Pilot Program paperwork, but to wait for a response from McGee.

87. On February 13, 2023, Plaintiff received an email from McGee requesting a meeting.

88. On February 20, 2023, Plaintiff met with McGee and Miller-Williams via Teams.

89. McGee instructed Plaintiff to provide updates from her doctor regarding whether she should continue working remotely.

90. Plaintiff 's doctor provided documentation to Defendant on April 24, 2023, stating that Plaintiff needed to work remotely as an accommodation for the next twelve months and possibly permanently ("[d]epending on the state of infectious disease").

91. McGee told Plaintiff that campus was getting one reported case of COVID-19 per week among employees and four reported cases per week among students.

92. McGee also told Plaintiff that the unreported numbers were likely to be much higher.

93. McGee informed Plaintiff that Beach informed her that students need to have some face-to-face instruction with each of their instructors.

94. McGee also informed Plaintiff that Beach told her that this was true even at the highest level, which is the level at which Plaintiff teaches.

95. McGee said Beach told her that he based this information on evidence that he had collected from other programs in the state.

96. McGee told Plaintiff that they were looking into her request for accommodation and that it would be an ongoing process.

97. McGee told Plaintiff that they would be looking at her job description and comparing student needs across the state.

98. To date, Plaintiff has not received a final decision from Defendant's human resources department and is still on temporary remote status.

99. Plaintiff is able to perform the essential functions of her job with a reasonable accommodation, but Defendant has discriminated against her and failed to accommodate her due to her health conditions/disabilities.

100. Plaintiff suffered from a disability/physical impairment, i.e., asthma, rheumatoid arthritis, type 1 diabetes, and hypogammaglobulinemia G, which substantially limited one or more of Plaintiff's major life activities and/or major bodily functions, including, but not limited to, her breathing, interacting with others, respiratory function, immune system function, musculoskeletal function, and endocrine function, within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

101. In addition, or in the alternative, Defendants perceived or regarded Plaintiff as suffering from a disability/physical impairment within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

102. In addition, or in the alternative, Plaintiff had a record of a disability/physical impairment, i.e., asthma, rheumatoid arthritis, type 1 diabetes, and hypogammaglobulinemia G, which substantially limited one or more of Plaintiff's major life activities and/or bodily functions, including, but not limited to, her breathing, interacting with others, respiratory function, immune system function, musculoskeletal function, and endocrine function, within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

103. Plaintiff was able to perform the essential functions of her position with or without reasonable accommodation.

104. Defendant failed and/or refused to provide any reasonable accommodation to Plaintiff, including failing to accommodate Plaintiff by allowing her to work remotely off campus.

105. Additionally, Defendant discriminated against Plaintiff because of her disabilities, i.e., asthma, rheumatoid arthritis, type 1 diabetes, and hypogammaglobulinemia G, and failed to accommodate her to allow her to work from home and instead required Plaintiff to put her health at risk and work on campus where she was exposed to individuals with COVID-19 and other viruses.

106. Defendant's actions, as alleged herein, constitute a violation or violations of the ADAAA, 42 U.S.C. § 12101, *et seq.*, including 42 U.S.C. § 12102(3)(A), and its accompanying regulations.

107. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

108. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

109. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

110. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and all allegations contained herein.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this matter take place in Kansas City, Kansas.

Respectfully submitted,

**EMPLOYEE & LABOR LAW GROUP OF KANSAS CITY, LLC**

By: /s/Kristi L. Kingston
 Kristi L. Kingston, KS Bar No. 19126
 12920 Metcalf Avenue, Suite 180
 P.O. Box 25843
 Overland Park, KS 66225
 Ph: (913) 286-5200
 Fax: (913) 286-5201
 Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**