## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SHELLY CETIN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2219-KHV |
| | ) | |
| KANSAS CITY KANSAS COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

## MEMORANDUM AND ORDER

On May 16, 2023, Shelly Cetin filed suit against Kansas City Kansas Community College ("KCKCC"), alleging failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #84) filed June 21, 2024. For reasons stated below, the Court sustains defendant's motion.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625

F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

## Factual Background

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

KCKCC is a public two-year community college that offers adult education courses in ESL (English as a second language).  In 2011, defendant hired plaintiff as a full-time ESL instructor. Plaintiff's job description states that she must "teach adult learners in a variety of learning environments including on campus, remotely, and at business partnership sites."  English As A Second Language (ESL) Instructor (Doc. #91-5) filed July 12, 2024.  It does not specifically require teaching in person.

Plaintiff has four immune system deficiencies: type 1 diabetes, rheumatoid arthritis, hypogammaglobulinemia and asthma.  These impairments substantially limit her breathing, respiratory function, immune system function, musculoskeletal function, endocrine function and ability to interact with others.  Because of her health conditions, plaintiff's doctors advised her to take precautions to avoid catching COVID-19 and warned her that COVID-19 could kill her.  Accordingly, plaintiff has a special air-purification system in her home, continues to wear an N95 mask, limits contact with others and quarantines from her husband when he returns from travel.  COVID-19 is an ongoing concern for plaintiff.

Before the COVID-19 pandemic, plaintiff never requested accommodations for her medical conditions and exclusively taught her courses in person.  During the pandemic, however, plaintiff's doctor submitted multiple letters to defendant, asserting that plaintiff should work remotely (i.e. from home) to limit her interactions with others and thus any exposure to potential infectious diseases—especially COVID-19.

In August of 2020, defendant allowed employees to submit doctors' letters requesting COVID-19-related accommodations for the fall semester of 2020.  On August 19, 2020, plaintiff's doctor sent a note to defendant stating that plaintiff is immunocompromised and should work remotely during the pandemic.  According to plaintiff's supervisor, David Beach, the ESL department was able to use online and virtual delivery methods, and it was appropriate for ESL instructors to teach from home; they did not need to go to campus to teach virtual classes.  Defendant granted plaintiff's request to work from home, and plaintiff worked remotely during the fall semester of 2020.

Defendant decided that beginning in January of 2021, all staff should work on campus.  Defendant therefore no longer gave blanket approval for all requests to work from home.  It

evaluated accommodation requests on a case-by-case basis.

In January of 2021, plaintiff's doctor sent defendant a fax informing it that plaintiff should remain quarantined and continue to work remotely.  Defendant allowed plaintiff to work from home for the spring semester of 2021.  Sherita Miller-Williams, a benefits coordinator, was not aware of any undue hardship that defendant experienced because plaintiff worked from home that semester.  Plaintiff testified that she could perform all the parts of her job remotely in a highly effective manner, and that she received the highest rating on her annual evaluation while she taught remotely from April of 2020 through May of 2021.  Plaintiff also testified that she is aware of other KCKCC instructors who teach from home, and that defendant is equipped to offer virtual classes—providing laptops, headsets and campus sites where students can attend class virtually. Further, Miller-Williams testified that defendant did not incur any financial costs from plaintiff teaching from home.

For the fall semester of 2021, defendant decided that all teachers must teach in person on campus, but that its decision would not necessarily override an employee's need for an accommodation to work remotely and teach virtually due to a specific health condition.  For this reason, in August of 2021, plaintiff requested that defendant allow her to continue teaching remotely from home.  On August 3, 2021, Miller-Williams sent a workplace-accommodation form to plaintiff.  Plaintiff did not return the form, but on August 11, 2021, her doctor sent another note to defendant stating that plaintiff's "condition tends to increase her risk for upper respiratory tract infections" and strongly recommending that she continue "to work remotely until the end of the fall semester to reduce her risk for infections and until we achieve better control over COVID-19 transmission and spread."  Khaled Girgis Deposition (Doc. #91-10) filed July 12, 2024, at 49:21–25.  Again, plaintiff's supervisor had no objection to plaintiff's request to work from home.

On August 12, 2021, however, defendant emailed plaintiff that her request to work from home was denied because it would cause undue hardship to KCKCC. Defendant informed plaintiff that employees' ability to work from home 100 per cent of the time had ended. Miller-Williams believed that allowing plaintiff to work from home would cause undue hardship because (1) defendant had directed all teachers to return to campus; (2) plaintiff's job description did not allow an employee to work 100 per cent from home; and (3) plaintiff's job was not built to be 100 per cent from home. Christina McGee, defendant's chief human resources officer, testified that she was concerned about the quality of the program and the impact on students if plaintiff taught from home. Defendant assured plaintiff, however, that it would continue to work with her on other accommodations so she could work on campus in the safest possible manner. Defendant's email did not mention plaintiff's failure to fill out the workplace-accommodation form.

On August 13, 2021, plaintiff emailed Miller-Williams that she had been working effectively from home and requesting an explanation why working from home would impose undue hardship on defendant. That same day, Miller-Williams responded, stating that work performance was not a factor in defendant's decision and asking plaintiff to let her know of other accommodations that would help her work on campus in the safest possible manner. Plaintiff believed that working from home was the only accommodation that would protect her from the risk of exposure to COVID-19, and she did not propose other accommodations.

During the fall semester of 2021, plaintiff taught her classes by Zoom from her office on campus.[1] Some students attended by Zoom from home, and some attended by Zoom from campus.

---

[1]     Neither party has provided information about how this accommodation was proposed or communicated to plaintiff, or whether plaintiff objected to it.

Plaintiff's office was about 40 feet from the main door of the building.  She attended staff meetings in person, and she used the public restroom in the building.  During a staff meeting, defendant granted plaintiff's request to sit near the door, far away from other instructors.  That semester, multiple people in the building tested positive for COVID-19, and plaintiff wore a mask while on campus.  Though she did not contract COVID-19, plaintiff claims that she got very sick and was having trouble breathing while she was working from her office on campus.[2]  Plaintiff does not know where she caught this illness.  Other than to work from home, plaintiff made no requests for accommodations.  She did not ask defendant to install an air purifier in her office, perform special cleanings, allow her to use a private restroom or allow her to work in a different building.

On October 4, 2021, plaintiff emailed defendant that she had "decided to proceed with filing the KCKCC request for accommodation," and that she was "inordinately adverse to submitting this paperwork, which basically asks me to declare myself disabled and my doctors to do the same."  Email To Sherita Miller-Williams (Doc. #85-2) filed June 21, 2024, at 27.  Plaintiff submitted the request for workplace accommodation, requesting to work from home, stating that working from home was the only way she could be safe from COVID-19 and that she had been exposed to COVID-19 when a colleague tested positive.  Plaintiff's doctor completed the medical inquiry form and indicated that plaintiff was able to perform the essential functions of her position with a reasonable accommodation, that her disability made her more susceptible to COVID-19 infection and therefore limited her ability to interact with others and that she should work remotely during the pandemic.  The form did not explicitly state that plaintiff should work from home.

---

[2]     In the second week of December of 2021, plaintiff's illness got so bad that her director sent her home to teach remotely.  Neither party alleges that plaintiff requested to work from home due to this illness.

On December 8, 2021, Williams informed plaintiff that HR had received her doctor's paperwork. In the second week of December, defendant sent plaintiff home from work and directed her to teach from home because she was sick. On December 13, plaintiff met with Miller-Williams and McGee by videoconference. After the meeting, McGee sent plaintiff an email stating that defendant was exploring its options for potential accommodations and that it hoped to reach a final decision by the first week of the spring semester. On January 11, 2022, plaintiff emailed McGee to ask about the status of her request given the new Omicron variant of COVID-19. The next day, McGee responded that she had been unable to resolve the matter and that plaintiff could work remotely while defendant finalized its decision. Since January of 2022, plaintiff has worked from home.

Because she could not work from home during the fall semester of 2021, plaintiff suffered emotional distress, mental anguish, depression and fear of serious illness and death, accompanied by loss of sleep and weight fluctuations. On May 16, 2023, plaintiff filed suit. Plaintiff asserts a single ADA claim that during the fall semester of 2021, defendant failed to accommodate her disability by denying her request to work from home and making her teach by Zoom from her office on campus. See Pretrial Order (Doc. #80) filed May 30, 2024. Defendant seeks summary judgment. See Defendant's Motion For Summary Judgment (Doc. #84).

## Analysis

Defendant argues that it is entitled to summary judgment because (1) plaintiff lacks standing; (2) plaintiff cannot establish a prima facie case because working from home is not a reasonable accommodation and defendant did not refuse to accommodate plaintiff's disability; (3) working from home would cause defendant undue hardship; and (4) plaintiff cannot recover tax consequences for any award of damages for mental and emotional distress.

## I.        Standing

To establish standing, plaintiff must demonstrate three elements: (1) an injury in fact which is concrete and particularized, and actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.  Bd. of Cnty. Commisioners of Sweetwater Cnty. v. Geringer, 297 F.3d 1108, 1112 (10th Cir. 2002).  An injury is "concrete" when it actually exists.  Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016).  Intangible injuries, such as the risk of harm, can be concrete.  Id.  Emotional distress can also be concrete.  See Hampton v. Barclays Bank Delaware, No. 18-4071, 2019 WL 6727083, at *6–7 (D. Kan. Dec. 11, 2019); Calogero v. Shows, Cali & Walsh, L.L.P., 95 F.4th 951, 958 (5th Cir. 2024); Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc., No. 21-14348, 2022 WL 4091738, at *1 (11th Cir. Sept. 7, 2022).  An injury is particularized when it affects plaintiff in a personal and individual way.  Spokeo, Inc., 578 U.S. at 339.

Defendant argues that plaintiff has not suffered a concrete and particularized injury.  Specifically, defendant asserts that plaintiff only alleges a technical violation of the ADA, which is not sufficient for Article III standing.  The Supreme Court has highlighted the difference between "plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law" and "plaintiff's suffering concrete harm because of the defendant's violation of federal law."  TransUnion LLC v. Ramirez, 594 U.S. 413, 426–27 (2021).  Only under the latter category does plaintiff have standing over the statutory violation in federal court.  Id. at 427.

Plaintiff does not allege that exposure to COVID-19, which she never contracted, constitutes a concrete injury.  Plaintiff presents evidence, however, that because she could not work from home, she suffered emotional distress, mental anguish, depression and fear of serious illness and death, accompanied by loss of sleep and weight fluctuation, and that these are concrete

and particularized injuries.

In light of such evidence, defendant has failed to establish that as a matter of law, plaintiff lacks standing.

## II.     Plaintiff's Prima Facie Case Of Failure To Accommodate

The ADA requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless such accommodations would impose an undue hardship.  42 U.S.C. § 12112(b)(5)(A).   To establish a prima facie case of failure to accommodate, plaintiff must show that (1) she is disabled; (2) she is otherwise qualified for the job; (3) she requested a plausibly or facially reasonable accommodation; and (4) defendant refused to accommodate her disability. Dansie v. Union Pac. R.R. Co., 42 F.4th 1184, 1192 (10th Cir. 2022).  Once plaintiff establishes her prima facie case, the burden shifts to defendant to present evidence that either (1) conclusively rebuts one or more elements of plaintiff's prima facie case or (2) establishes an affirmative defense, such as undue hardship.  Punt v. Kelly Servs., 862 F.3d 1040, 1050 (10th Cir. 2017).  If defendant presents such evidence, the employee must present evidence regarding the affirmative defenses or rehabilitating her prima facie case to sufficiently establish a genuine dispute of material fact.  Id.

Defendant does not dispute the first two elements of plaintiff's prima facie case: that plaintiff is disabled and otherwise qualified for her position.  As to the third element, defendant argues that as a matter of law, the accommodation which plaintiff requested was not reasonable. As to the fourth element, defendant argues that it did not refuse to accommodate plaintiff's disability.  The Court addresses each element in turn.

### A.     Whether Plaintiff's Request To Work From Home Was Reasonable

Defendant argues that it is entitled to summary judgment on the third element of plaintiff's

-9-

prima facie case because working from home was not a plausibly or facially reasonable accommodation. Plaintiff asserts that working from home was a reasonable accommodation because teaching in person is not an essential function of her job as a full-time ESL instructor.

Reasonable accommodations are accommodations which presently, or in the near future, enable the employee to perform the essential functions of her job. Hampton v. Utah Dep't of Corr., 87 F.4th 1183, 1192 (10th Cir. 2023). Essential functions are the fundamental job duties of the employee's position. Id. In determining whether a job function is essential, the Court considers "(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job." Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1119 (10th Cir. 2004) (citing 29 C.F.R. § 1630.2(n)(3)). An employee's request to be relieved from an essential function of her job is not a reasonable accommodation. Id. at 1122.

Defendant argues that work from home is not a reasonable accommodation because teaching in person is an essential function of plaintiff's job. Its judgment is that in-person instruction is an essential staple of most educational courses and therefore a requirement of most teaching positions. Many courts have concluded that under the ADA, regular, in-person instruction is an essential function for teachers when (1) their responsibilities include supervising students in the classroom, (2) the school would need to find a replacement during their absence or (3) their job duties could not be effectively performed remotely. See e.g., Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458, 460 F. Supp. 3d 1167, 1192 (D. Kan. 2020), aff'd, 851 F. App'x 828 (10th Cir. 2021) (teaching and supervising students were essential functions of middle

school teacher's job); <u>Sarkisian v. Austin Preparatory Sch.</u>, 85 F.4th 670, 674–77 (1st Cir. 2023) (ninth grade English teacher's request for leave without end date not reasonable accommodation because students needed consistent instructor and school could not guarantee availability of temporary replacement); <u>Thomas v. Bridgeport Bd. of Educ.</u>, No. 3:20-CV-1487 (VLB), 2022 WL 3646175, at *2–4 (D. Conn. Aug. 24, 2022) (although they were suspended during COVID-19 pandemic, in-person instruction and classroom management did not cease to be essential functions of high school Spanish teacher's job); <u>Jordan v. Sch. Bd. of the City of Norfolk</u>, No. 2:22-CV-167, 2023 WL 5807844, at *9 (E.D. Va. Sept. 7, 2023) (in-person attendance essential function of elementary principal's job whose duties included interacting with teachers, staff, students, parents and community members, observing teachers and ensuring safety and condition of building).

On the other hand, at least two district courts have concluded that in-person teaching is not an essential function of a professor's job when, as in this case, the university is capable of providing remote courses and has previously allowed the employee to teach remotely.  <u>See</u> <u>Oross v. Kutztown Univ.</u>, No. 21-5032, 2023 WL 4748186, at *19 (E.D. Pa. July 25, 2023) (teaching in person and conducting office hours not essential functions of job of Associate Professor of Psychology because he could perform (and in the past had performed) essential functions of job by teaching remotely); <u>Gardner v. Kutztown Univ.</u>, No. 22-1034, 2024 WL 1321068, at *23 (E.D. Pa. Mar. 27, 2024) (teaching in person and conducting office hours in person clearly not essential functions of job of Associate Professor of Business Administration and professor could fully perform essential functions of job by teaching remotely, as she had done in past); <u>Fields v. Bd. of Trustees of Georgia Mil. Coll.</u>, No. 5:22-cv-74, 2024 WL 375387, at *9 (M.D. Ga. Jan. 31, 2024) (factual issue whether teaching in person essential to plaintiff's employment because defendant's other campuses allowed science professors to teach on line, plaintiff had previously taught on line

and plaintiff's employment contract did not expressly require in-classroom instruction).

Here, plaintiff has presented evidence that (1) her written job description does not require her to teach in person; (2) with no negative consequences, she taught effectively from home since the spring of 2020 (except for the fall of 2021 when she taught on campus); (3) plaintiff received high ratings while teaching from home; (4) her supervisor stated that it was not essential that she work in person; (5) defendant allows other teachers to work from home; and (6) defendant is equipped to offer virtual classes.  Moreover, even when plaintiff was working on campus in the fall of 2021, she was still teaching virtually, so she was not teaching "in-person" either way.

On this record, viewing the evidence in the light most favorable to plaintiff, a reasonable jury could easily find that teaching from campus is not an essential element of plaintiff's position and that her request for that accommodation was reasonable.  For basically the same reasons, defendant is not entitled to summary judgment on its theory that allowing plaintiff to work from home would cause undue hardship.[3]

---

[3]    As noted, defendant argues that it is entitled to summary judgment because allowing plaintiff to work from home would cause undue hardship.  Undue hardship is an action that requires significant difficulty or expense when considered in light of various factors, including (1) the nature and cost of the accommodation, (2) the number of defendant's employees, (3) the employer's financial resources and (4) the impact of the accommodation upon the operation of the employer.  Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154, 1178 (10th Cir. 1999); Senatore v. Lynch, 225 F. Supp. 3d 24, 36 (D.D.C. 2016) (allowing FBI employee to use notes on training exam would pose undue hardship by fundamentally altering nature of program); Guice-Mills v. Derwinski, 967 F.2d 794, 798 (2d Cir. 1992) (granting head nurse request to delay start time by two hours would cause undue administrative hardship on hospital by requiring someone else to assume head nurse responsibilities until plaintiff arrived each day).

Defendant argues that it is not a work-from-home institution and that it directed all teachers to come back to campus.  Indeed, McGee (defendant's chief human resources officer) testified that she had concerns about how remote teaching impacted the quality of students learning.  Plaintiff has presented evidence that (1) Miller-Williams (defendant's benefits coordinator) stated that she was not aware of any undue hardship to defendant from plaintiff working from home during the

(continued. . .)

B.      Whether Defendant Refused To Accommodate Plaintiff's Disability

Defendant argues that it is entitled to summary judgment on the fourth element of plaintiff's prima facie case.  Specifically, defendant claims that it did not refuse to accommodate plaintiff's disability during the fall semester of 2021 because it engaged in good faith in the interactive process and allowed plaintiff to teach from her office, use hand sanitizer, wear a mask and sit near the door away from others during staff meetings.  Plaintiff responds that defendant refused to accommodate her disability because these accommodations were not effective in that she was still exposed to staff and students and risked contracting COVID-19.

Under the ADA, once an employee gives her employer notice of her disability and any resulting limitations, the employer must engage in the interactive process with the employee to identify the employee's precise limitations and attempt to find a reasonable accommodation. Norwood v. United Parcel Serv., Inc., 57 F.4th 779, 786 (10th Cir. 2023); Aubrey v. Koppes, 975 F.3d 995, 1009 (10th Cir. 2020).  It is crucial that both parties communicate in good faith, because each side possesses different information which is critical to determine whether a reasonable accommodation can permit the employee to perform the essential functions of her job.  Norwood, 57 F.4th at 787.  When the employee causes the breakdown of the interactive process by failing to provide necessary information, the employee cannot claim that the employer refused to provide a

---

(. . .continued)

spring semester of 2021; (2) defendant incurs no financial costs by having its teachers work remotely; (3) plaintiff received high performance reviews when she taught from home; and (4) defendant allowed teachers of on line courses to teach their classes remotely from home. Again, plaintiff points out that she was teaching "remotely" either way—either from her computer in her office or from her computer at home.

On this record, plaintiff has created a genuine issue of material fact whether allowing her to work from home would have inflicted undue hardship on defendant.  The Court therefore overrules defendant's motion for summary judgment on this issue.

reasonable accommodation.  <u>Templeton v. Neodata Servs., Inc.</u>, 162 F.3d 617, 619 (10th Cir. 1998).  The ADA only requires that defendant provide plaintiff a reasonable, effective accommodation, not the accommodation of her choice.  <u>Norwood</u>, 57 F.4th at 787.  The employer has discretion in choosing between effective accommodations.  <u>Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.</u>, 180 F.3d 1154, 1177 (10th Cir. 1999).

As noted above, defendant allowed plaintiff to teach from home during the spring semester of 2021.  On August 11, 2021, plaintiff sent defendant a doctor's note stating that she has a condition which tends to increase her risk of upper respiratory tract infections and strongly recommending that she continue to work remotely until the end of the fall semester to reduce her risk of infection and until the transmission and spread of COVID-19 was better controlled.  The note alerted defendant that because of plaintiff's disabilities, COVID-19 threatened her health and she needed to limit her exposure accordingly.

In response, defendant began the fall semester by allowing plaintiff to teach her classes by Zoom from her office on campus, wear a mask, use hand sanitizer and sit near the door away from others during staff meetings.  Plaintiff apparently did not object these accommodations, explain to defendant why they were ineffective or propose other accommodations.  Plaintiff has not established a genuine issue of material fact as to the reasonableness of these accommodations.  Based on defendant's knowledge at the time, these accommodations—which limited plaintiff's exposure to others and reduced her risk of contracting COVID-19—were not unreasonable; plaintiff was able to perform the essential functions of her job and did not contract COVID-19.  <u>See</u> <u>Smith</u>, 180 F.3d 1154 (employer has discretion to choose between effective accommodations).

Two months later, on October 4, 2021, plaintiff submitted the request-for-workplace-accommodation form, and her doctor submitted the medical inquiry form.  On the request form,

-14-

plaintiff reiterated her request to work from home and stated that she had been exposed to COVID-19 when a colleague tested positive.  Plaintiff stated that working from home was the only way she could be safe from COVID-19, but she did not explain why working remotely from her office was not sufficient to effectively minimize her risk of contracting COVID-19.  See Norwood 57 F.4th at 787 (plaintiff not entitled to accommodation of choice, but only to reasonable accommodation).  On the medical inquiry form, plaintiff's doctor stated that plaintiff should work remotely during the pandemic but did not explicitly state that plaintiff needed to work from home—it only stated that her susceptibility to COVID-19 infection limited her ability to interact with others.  Defendant's accommodation—allowing plaintiff to teach from her office—limited plaintiff's interaction with others and, though it did not eliminate the risk completely, minimized her risk of contracting COVID-19.

As for defendant's engagement in the interactive process, plaintiff argues that defendant presented her a "take-it-or-leave-it" choice to teach remotely from campus for the fall semester of 2021, even though it was aware that working around others posed a significant risk to her health. The interactive process, however, is a two-way street.  After defendant denied plaintiff's request to work from home for the fall semester, plaintiff apparently accepted the decision and started working from campus.  Though she requested an explanation why working from home would pose an undue hardship and on October 4, 2021, reiterated her earlier request to teach from home, plaintiff did not respond to defendant's request that she suggest other possible accommodations. Except to state that she had been exposed to a colleague who tested positive for COVID-19, plaintiff did not communicate how defendant's accommodation was ineffective or unreasonable. Plaintiff's doctor did not opine that plaintiff had to work from home—only that she should work remotely, which is exactly what defendant allowed her to do, albeit from campus.

Plaintiff has not demonstrated a genuine issue of material fact whether, based on information which plaintiff communicated to defendant, it refused to accommodate her disability during the fall semester of 2021. The Court therefore sustains defendant's motion for summary judgment on this element of plaintiff's prima facie case.[4]

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion For Summary Judgment</u> (Doc. #84) filed June 21, 2024 is **SUSTAINED.**

Dated this 29th day of October, 2024 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

---

[4]    Because the Court sustains defendant's motion for summary judgment on the fourth element of plaintiff's prima facie case, the Court need not address defendant's arguments on whether plaintiff can recover for the tax consequences of an award for mental or emotional distress.